The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and times will be as allotted to counsel. The case today is Robert Cushing et al. v. Sherman R. Packard, Appeal No. 211177, Attorney Lam. Please introduce yourself for the Court and proceed with your argument. May I proceed? Yes, please. Good morning, Your Honors. Katherine Lam for the United States and may it please the Court. The question in this appeal is simple. Whether plaintiffs may sue the State of New Hampshire for reasonable accommodations under Title II of the ADA and Section 504 of the Rehabilitation Act. And the answer as well is simple. Yes, they can. Title II and Section 504 obligate public entities and programs that receive federal funding, including state legislatures, to provide reasonable accommodations to qualified individuals with disabilities. Because sovereign immunity has been abrogated or waived under these statutes, plaintiffs may sue the state. And the state may dispute in merits proceedings whether remote participation in legislative sessions constitutes reasonable accommodations and whether this would fundamentally alter the nature of those sessions. The source of the mischief here appears to be plaintiff's form of pleading, bringing claims against the Speaker of the House in his official capacity. But such a pleading lies against the state, not against the Speaker personally. Legislative immunity is not a form of sovereign immunity that the state may claim. Instead, legislative immunity protects individuals from personal liability to ensure legislators freedom from improper influence and distraction and to promote their alignment with and performance of their constituents' interests. This immunity cannot be claimed by the state, which is the defendant here. Neither the Supreme Court's decision in Consumer's Union nor this Court's decision in Harwood compel a different conclusion. Both of those cases were affected by the particularities of Section 1983 actions, which, as we know after Will, cannot proceed directly against the state, unlike claims under Title II and Section 504, as we have in this case. Although Consumer's Union stated in what is arguably FICTA that the Virginia court could claim legislative immunity, contemporaneous and subsequent decisions in cases like Owen, Umber, Kentucky v. Graham, Hafer v. Mello, all confirm that government defendants may not claim the immunities that belong to their officials when sued in their individual capacities. Counsel, do those, Judge Thompson, please proceed. In McCarthy v. Pelosi, and I know that's a case which dealt with the speech and debate clause, and I know that the immunity is not completely coterminous with state legislative immunity, but how would you go about distinguishing that case? Well, that's a very different case than this one. This one is raised under the ADA and Section 504, and it proceeds directly against a state entity. As I understand McCarthy v. Pelosi, it does not present the threshold question here that this Court needs to decide, which is whether a state government may claim legislative immunity, which is a personal immunity. If the claim there was styled as a suit against the Speaker of the House of Representatives in her official capacity, would you treat that as a claim in which immunity could be sought? Well, Your Honor, I don't think that's a question that we need to answer today. I would like to know the answer to it on your theory. So, if there were a cause of action that could, as in this case, lie directly against… No. The suit is styled as a suit for prospective injunctive relief against the Speaker of the House of Representatives of the United States in her official capacity. When the suit is so styled, should a court treat that as a suit in which immunity can be asserted? Well, Your Honor, I think I'd need to know what the cause of action is there. The cause of action brought in the McCarthy case. I don't… Your Honor, I'm not sure whether that suit can lie directly against the government. If it can, and it does, and is litigated as it… You don't get to that question until you have a question about… The immunity question is prior because it's jurisdictional. So, I just want to know, is your position that the immunity cannot lie when it's brought against an official in her official capacity for prospective injunctive relief? To the extent the case really and truly lies directly against the government entity, then I think the answer is no. The immunity cannot lie because it is… Okay, so the real question is, does it when it is styled as a suit for prospective injunctive relief against the official in their official capacity? I think we need to know… I'm sorry, that's on my end. I'm sorry, I'm trying to keep time on my own end. I apologize. I think what we need to know is how the litigation is actually being proceeded, how the litigation has, in fact, proceeded. I cannot speak to that specific case. What I can speak to is that in this case, it is one that has been proceeded as… The proceeding has been against the state itself. I just have one last question. Suppose… I take it the New Hampshire legislature is a proper defendant under Title II, correct? Yes. Suppose the suit was brought… I'm sorry, Judge Barron. The state of New Hampshire is a proper defendant. The legislature as an arm of that. Can't the legislature be named as a defendant in its own right? I believe that pleading nevertheless would lie against the state. Well, why is that? Because, as I understand it, the state is… The legislature is an arm of the state. I don't know that it can proceed separately. An agency of the state? An arm of the state? An agency. You can't sue the Department of Transportation or the MBTA. You always have to sue the state. Oh, sure. I don't know that I am able to say whether the state of New Hampshire is an agency of the state. It is certainly an arm of the state. Yes, you can sue agencies, of course. If it had been brought, then, against the legislature of New Hampshire, your position would be the same. Yes. Yes, it is still a case against the state. Absolutely. Your Honor, I know that I'm over my time. If I can just have a concluding thought, if that's acceptable, if there are no further questions. We'll see if there are further questions, but yes, of course. Go ahead. Thank you, Your Honor. Simply to conclude, we believe that the personal defense of legislative immunity does not allow the state to avoid defending against this case on the merits, and for that reason, the court should reverse and remand for further proceedings on whether the plaintiffs are entitled to reasonable accommodations under Title II in Section 504. Thank you. Are there additional questions from the court of Ms. Lamb at this time? All right. Thank you for your argument. And we will hear from Mr. Piedra. Thank you, Your Honor, and may it please the court, Attorney Israel Piedra, on behalf of the appellants in this matter, with the court's permission, I will ask to reserve two minutes for rebuttal. Yes. I'll begin by stating that I fully agree with the remarks of the United States, and with regard to Judge Barron's question, I would refer the court to our opening brief starting at page 31, and specifically the Cora DeLayne case. It talks about how the real import of an action isn't determined by, you know, the caption necessarily, and in some cases, an official capacity action might not sound directly against the state. In this case, it does, given that we're proceeding under Title II, which acts against the state directly. So that's the only thing I'll add on that point. I would like to move on to our alternative arguments, unless the court has further questions on that aspect. I'd like to start by noting that this is an extraordinary situation. We're talking about disabled state legislators, some with stage four cancer, compromised immune systems, being forced to either, A, put their lives at risk by going into a room with 400 individuals, many of who are unmasked and unvaccinated, or B, forfeiting their right to vote on legislation and leaving thousands of granite staters without a voice in the legislature.  Mr. DeGioia, if I may, but for the pandemic, but for COVID, or some other external factor like that, would these legislators have a claim that they should be able to participate remotely? I think that's the beauty of the Americans with Disabilities Act, is that it gives a discretion to determine whether a requested accommodation is reasonable. And certainly if this were not in the midst of a pandemic and someone requested an accommodation like this, the court would have the opportunity to weigh the harms and the benefits and decide whether the accommodation is reasonable under those circumstances. And to also say that that's also part of the balancing act that any court engages in when deciding whether to grant an injunction generally. So if I'm hospitalized with a serious condition, I hope this doesn't happen to me anytime soon, but if I'm a heart attack victim and I can't get to a regular legislative session, do I have a good claim for accommodation? And should I be permitted to vote remotely? I would say that in many of those situations, the individual would not be a qualified individual under the ADA. It applies to actual disabilities rather than transitory illnesses, for example. Assuming that the individual did have a disability, I would then ask, is this a situation where they're actually hospitalized and cannot leave? Is it a doctor's appointment that they could reschedule?  I could envision a situation where, yes, if someone is disabled and unable to attend even without the pandemic, a court could at least reach the merits of the question of whether it's a reasonable accommodation. But again, that's a question for the district court. Let me just ask, if I may, one follow-up question that's related. We're talking about a federal common law immunity here. If we had a decision from the New Hampshire Supreme Court, if the state courts had defined the scope of the state law immunity such that it exists in this area, either under separation of powers doctrine or however they were to define it, and if they defined it more narrowly and said that the immunity may not be as broad as the federal common law immunity, would that help inform us in deciding, with respect to New Hampshire, how the federal common law immunity would apply, the scope of the federal common law immunity? I think New Hampshire's position on the matter is relevant but not dispositive. In this situation, you know, it is a matter of federal common law, but at the same time, one of the frameworks or the bases for that common law is comity in respect to the state. So certainly it's relevant, in my opinion. In this situation, in fact, the opposite is true. The New Hampshire Supreme Court has rejected this type of argument, and in fact, rejected that type of argument last year when a state legislator sued the speaker saying a ban on guns in the chamber was unconstitutional. The court rejected the idea that that was not justiciable. So the Supreme Court has in New Hampshire to do something about it. Let me interrupt you just briefly. I need to do a technical check. Is Judge Barron still with us? I am. It's just that for some reason my video is on right now. The audio is not working. So if I turn the video off, I can hear fine. Can you hear me fine? Yes. Are you good to proceed, Judge Barron? I apologize, but I think this will work fine for me. Not at all. Sorry about that, Mr. Piedro. Of course. Thank you, Your Honor. I'd like to actually, unless the court has further questions on that. I do. If you don't mind. To me, the initial question is an argument that you barely touched. And you almost seem to have disavowed in your reply brief. And the initial question has to do with the scope of the legislative immunity. You have made a broad argument that there is an exceptional circumstances exception to legislative immunity. But other than the broad argument, you've not really presented us with a very fact-based, narrow argument as to what that might be. And that's obviously a very, very different standard than reasonable accommodation. There can be all sorts of reasonable accommodations, but they're not extraordinary circumstances. So Judge Howard just asked about the views of the New Hampshire court. Yes, it is not binding, but wouldn't it nonetheless be informative in terms of one's interest in comity here? And let me just frame this for you a bit more. I am dubious about the argument of the United States. I am also dubious about the argument that Congress abrogated. And so logically, I am back to the scope of immunity and the extraordinary circumstances exception. So what is it? First, is the record in this case adequately developed on that point? I do know there were preliminary injunction hearings, all done on an expedited basis, obviously. You have represented that the 400 members of the legislature would all be in the same room. Some of them would not be vaccinated. Some of them would not wear masks. I believe there is some evidence that aides who are not necessarily masked or vaccinated actually come into the room. So have any further precautions been taken by vote of the House in light of what I believe the record now shows? The answer is no, Your Honor. In fact, things have gone in the other direction. Rather than allowing, as it was in the past, members to participate in committee meetings remotely, they now have to meet in person in a building that is not properly ventilated. Members do not have to wear masks in that building. In fact, when the legislature meets next, which will be, we believe, in late October, there has been indications that we will meet not in a socially distanced setting, as it was previously, but in fact in the actual State House in Representatives Hall with 400 members sitting side by side. But none of that is, as of yet, in the record. There's another issue where I find the record is rather barren. The State, excuse me, the defendant speaker, and I've already indicated I'm dubious that this is, as it involves only one House, that this is really a suit against the State. The defendant says, look, claims of changing the rules in order to obtain a partisan advantage is a matter for the electoral box. It is not an exception, if you will, to the common law doctrine of legislative immunity. So I have a two-part question. In your view, does, I assume that there are some members of the other party who are also put at risk of death or injury, but the record I don't believe shows the number of those people or the nature of the risk that they are undergoing. That assumes that this is not a case about partisan advantage. This is a case about extracting a price at the risk of death of any legislator voting. So the first part has to do with the record in the case and whether there should be a remand for development of that record. The second has to do with the assertion by the State that to the extent you're saying this is one party targeting another, in your view, is the State correct that those are not exceptional circumstances? That is a matter to be decided without judicial intervention at the ballot box. So first question first and then second. Sure. As far as the first question, if I understand it correctly, whether there are members of the opposing party who are also potentially at risk, I don't know. I assume so. Certainly they haven't made their voices heard in the same way. No, no, no, no, no. This is not a matter of them asserting claims. This is simply a matter of the scope of the harms that potentially would be inflicted by the rule adopted by the House. And I take it there is no evidence on that. There is not really, Your Honor. You're right. And that's and that is why we believe that this is an exceptional circumstance is because there's literally a risk of death. And if that's not exceptional, I'm not sure what would be. With regard to your second question, if I may, we are actually challenging a legislative rule here. There's not a single mention of the rule in question anywhere in our complaint. And that kind of distinguishes this case from the cases in Harwood and Consumers Union where the plaintiffs were challenging a rule. Isn't this a default rule? Didn't the House adopt the Mason's as a default? Correct. The House adopted Mason's as a manual of parliamentary procedure in the case of no contrary rules. But our position is really we're not asking for anyone to change rules. And this happens all the time in the private context where an employer needs to make an accommodation, even though there is a contrary rule. Even the government has a regulation that needs to be that needs to be accommodated. Counsel, once again, you have slipped into the language of accommodation and this has to do with extraordinary circumstances. And normally the adoption of a default rule widely recognized as appropriate in part parliamentary procedure applied to the United States. That is hardly an extraordinary circumstance. So this has to be tied to the pandemic and it has to be tied to the specific risks posed by the pandemic. Certainly, yeah. And the other thing I'd add to that is that the that the effect of the rule is to exclude legislators from legislative session. This court said in Harwood and the Supreme Court has said many times that the doctrine must be interpreted in light of its purposes and that the purposes of the doctrine are to allow legislators to represent their constituents. Here, the effect of the rule is to prohibit legislators from representing their constituents. That makes it extraordinary. And in fact, the Supreme Court has in multiple cases. But it seems like there's two different there's three different things running together. And I just want to try and tease them out. One person. I wasn't able to hear you there, Judge. One question is, is this a legislative act that's being challenged? OK. Another question is, is it if it is a legislative act that's being challenged? Is there nonetheless an extraordinary circumstance exception that enables it to be challenged? So I understand the discussion you were having about why even assuming it's a legislative act, there may be an argument that this falls within the extraordinary circumstance exception that enables a challenge to a legislative act under Kilbourn. That has to do with the question of the pandemic and the involvement of the pandemic. But I thought you were making a suggestion that at the prior question of whether this is a legislative act at all. One version of the argument I heard you making was that. Was that the idea? Judge, your last question did not come through. Can you hear me now? Yes. You were saying that the argument you heard me making was and then you cut out. What I heard you making was that the there's no legislative act being challenged because there's no legislative rule being challenged. Yeah. Judge, that's exactly the kind of the sequence of the arguments here. First, we're saying that we're not really challenging a legislative act here because under the ADA, we do not need to show any improper actions by any individual legislator. All we need to show is A, are our clients disabled? And B, is the accommodation reasonable? What you're seeking is a remedy that would require, in effect, an amendment to the current operative rules of the House. Isn't that right? I disagree with that. As I was saying, this happens in, for example, voting cases where blind voters request to be able to vote online with assistance rather than receive a written paper ballot. Even though state law says to the contrary, courts have found that the ADA imposes a requirement to accommodate those voters. That may be true. But as to the question of whether the action of accommodating is a legislative act, I'm not following how it's not. Well, no, our position is when there doesn't need to be any proof from a legislator, I guess, about how an act violates something. The actual act of implementing a court order saying this is a reasonable accommodation, that's administrative, that's ministerial. I'm sorry, Judge Barron, I defer to you, but then I have some questions. I just have one other. I take the point. And then the third version of it, which I also wanted to see if I understood, it sounded like you were making a separate argument from the one you just made about why it's not a legislative act. That it's not a legislative act, even setting aside the extraordinary circumstances exception, for the additional reason that the effect or purpose of this particular legislative act is to exclude the legislator from participating in the legislative process. And I take it in that context, you're trying to make this case, I don't mean to say that in a pejorative way, but you're trying to make this case analogous to the Bond case or Powell v. McCormick. Is that the idea? Yeah. And the point there is that the Supreme Court has not found any barriers to deciding those questions when a legislator is excluded. In those cases, though, it is the case that it was actually an ouster, not an effective ouster, not a consequence of following the rule would be to effectively make it so you couldn't. But the actual question there was whether the person would not be able to be a member of the legislature. So what would be support for the idea that we could extend the notion that you could challenge an actual ouster, a formal one, to now look at those rules of legislative procedure, we'd assume for the moment it is one, those rules of legislative procedure that simply would have the effect of making it hard to participate. I just don't know of any case law for that, but I take it implicitly you're asking us to extend them in that way. Yeah. And to me, actually, the argument is stronger in this case, because in bond, for example, the House or the legislature voted a piece of legislation, a resolution that specifically said bond cannot take a seat. And despite that fact, despite that legislative act, you know, the Supreme Court found jurisdiction to rule on that claim. But now you're back to the serial point. I want you to set that aside. I would like to say, imagine there was a rule here that was passed saying that this particular legislature, no accommodation for him. Sure. Again, I think that it's hard to silo these arguments, Your Honor, because I think that they're related to a certain extent. But in this situation where we're having a contrary federal law, that that legislative resolution would contravene. Yes, we think that legislative immunity would not apply in that case. Wouldn't this be a de facto ouster? And there is a rule which results in a de facto ouster. Precisely. And that, again, because these things do run together or should be viewed together. That's an extraordinary situation that a disabled person would be excluded from participating and representing their constituents, implicating very, very severe federal rights and personal rights to be represented and to have the right to vote. That that would be allowed to stand without judicial review. We think that would be inappropriate. If I may, as I understand it, the House and the Senate have taken very different approaches to this. And the Senate has, in fact, allowed virtual voting for whatever reasons. Perhaps they think it's necessary to secure access to the right to vote. So because the two houses take different approaches, it suggests to me that there may be an argument that perhaps the New Hampshire court would be receptive to. Perhaps not. Or perhaps this court would be. Or perhaps not. That the normal reason one grants legislative immunity is to keep the judiciary out of the proper functioning of the legislature for the purposes of democracy. But here, that underlying rationale, the adoption of this default rule may, in a funny way, be contrary to the underlying rationale, at least in New Hampshire, for the purpose of recognition of legislative immunity. That, of course, makes this case very different from the D.C. circuit case and, indeed, different from the New Hampshire Supreme Court case, saying there's no problem with authorizing remote voting in the Senate. So I'd be interested in your response, please. I think that's absolutely right. I mean, here, applying the doctrine doesn't further any of its purposes, is my point. There's no personal liability. There's no personal defense costs. It's not based on legislative acts. No, no, no, no. Let's assume this is an act of the legislature. The speaker has articulated a number of very good reasons why he thinks the system functions better with in-person voting. You are disputing that and saying, no, it's almost self-evident that that is not the effect, or to use Judge Thompson's words, that is de facto an ouster rule. And, once again, I'm struck by the paucity of the information in the record in the district court. Quite understandable, but still. And I'm also struck by the absence of any guidance from the New Hampshire Supreme Court. Both of these things are simply concerns of mine. Well, I agree. I think in order for the defendant to deny this relief, there would need to be some sort of showing. No, no, no, no, no, no, no, no. Maybe under the ADA, but you're the one arguing for exceptional circumstances to the doctrine of legislative immunity. It is far from clear to me that the burden necessarily, unless as a matter of state law, the burden lies on the speaker. I think the answer is that there would need to be some determination in the record about what are the purposes of the doctrine being furthered in any way and what are the harms caused by furtherance of the doctrine. When we're talking about exclusion, when we're talking about death versus, you know, not wanting to accommodate a Zoom call, to us, that tilts in the balance of extraordinary. Counsel, you argued in the alternative, I thought extraordinary circumstances was one argument, but I thought you were also arguing as the government did that the act itself has eliminated any immunities. Yes, Your Honor. And to that extent, I think that the Rehabilitation Act piece of our claim is actually the most straightforward. And in fact, if the court finds that there is relief available under the Rehabilitation Act, it doesn't need to reach any of the other arguments. It doesn't need to reach the ADA, for example. That's because the remedies are the same under both statutes. And we think that the Rehabilitation Act argument is clearest because it applies to any program or activity and defines that as all of the operations of the state. All. There's no ambiguity there. What the statute says is if you accept federal funds, you become bound by the requirements of the statute. The Supreme Court has described it as a quid pro quo in the nature of a contract. You know, this is a quote, acceptance of the funds triggers coverage under the non-discrimination provision. 477 U.S. 597. So to us, you know, where the New Hampshire House, it's undisputed, has accepted federal funds, use those funds for the purposes of conducting legislative sessions during the pandemic. And in fact, use those funds for voting devices and technologies during the House sessions. We believe that highlights what would completely subvert Congress's intent in this situation to allow a state entity to accept federal funds and then evade the non-discrimination requirements of the statute. You know, as we just how do you distinguish that from Tenney? Because as I understand, Tenney, Tenney covers a situation which the statute applied to any person acting under color of law, which would seem to cover all acts by any person. And yet the court there said, well, that's too general to take the view that they consciously thought about those particular acts that would involve legislative acts. And therefore, you'd need a much more clear indication of that. So it's true that this applies to all activities of the entities that you can sue. But I don't see how that's very different than the text of Section 1983. A couple of things in that regard. First of all, I would say that the unique context of 1983 and Tenney itself talks about this is that there is a presumption by courts that common law defenses are preserved under that law. That's true. And in other contexts, the court has said that. And I think it's United States versus Texas. So there's many circumstances in which there is a sense that in order to abrogate a common law defense or immunity, there would be some need to speak directly to it. Now, you find that you speak directly to it by virtue of the reference to acts or operations, but that doesn't seem to me to be very different than the language of Section 1983 itself. Well, I would draw an analogy to the court sovereign immunity case law, and it has rejected the idea in Tescadero and other cases that the fact that the state is literally included in a general description of persons that accept federal funds, in that case, was the Rehab Act before it was amended. That's not sufficient. But as soon as you name the state itself specifically as a defendant, as is the case here, then that is specific enough. That's not true, because I thought after Tescadero, they amended to include an express waiver of immunity, even though the state had already been named in the statute. The state was not named in the statute prior to Tescadero. That was the basis of the court's decision, that it only applied to entities that accepted federal funds. Yes, the state was an entity under that definition, but it did not name the states themselves. In subsequent cases like Kimball— If they had just amended the statute, if the statute had read to begin with and included the word state, then there would be no 11th Amendment issue? That is what the court's subsequent decision has stated, Your Honor. Isn't the state mentioned in Title I? Can you repeat that, please? Isn't the state mentioned in Title I? If I'm remembering correctly, Your Honor, I'm not sure on that, but I think that the issue in Garrett was— Your position is that so long as the statute references the state, there's no need to make any other references, just then clear that they meant to abrogate sovereign immunity? That is correct. That is crystal clear. Again, I'll refer to the Kimball case, Seminole Tribe case. Those statutes that were at issue there did not mention sovereign immunity, 11th Amendment immunity at all. The court said— No, you made a different point. I thought you were saying—oh, you're saying that they did not mention it, but it did mention state, and it was assumed to abrogate. Correct. And the court, in fact, said it was unmistakably clear that it was Congress's intention to abrogate. So we think that the same analogy applies here, and I'd just like to point the court to the Yeske case at 524 U.S. 206. We cited it in our brief. That case involves Title II, and it was a claim by a prisoner against the state prison system. The state argued that Congress didn't intend the ADA to cover the internal workings of a prison because that was a traditional and essential state function. The Supreme Court rejected that, and it said Congress doesn't need to envision every precise situation in order for the ADA to apply there. And, in fact, it reached that decision despite applying the clear statement rule. It assumed it applied to state prisons. The court said state entities are covered by the statute. No exceptions. State prisons are state entities. Therefore, they're covered. And it said something to the effect of the fact that it can be applied in situations not expressly anticipated doesn't demonstrate any sort of ambiguity. It demonstrates threat. Taking that point, just remind me again, how does that square with Tenney v. Frito? Well, again, the proper defendant in a Title II or a Rehabilitation Act claim is the state. We're bringing those claims. No, but you were focused on the words activities and operations. I take the point about the U.S. making this argument. That's not what we're talking about now. We're talking about whether the language of activities and operations abrogates legislative immunity because it refers to all of its operations. And my question is, well, how does that square with Section 1983 where obviously persons have legislative immunity, particularly persons who are subject to damages, and yet Tenney concluded that it would be understood against the background of legislative immunity even though it applied to all the acts of those persons? Again, the assumption by the court in Tenney and other 1983 cases was that if the Congress wanted things to apply in that kind of specific situation and abrogate an accepted common law immunity, then it would need to be more specific. I think if 1983 had referred specifically to legislators, even though it didn't explicitly mention immunity, then the court would have reached a different conclusion. And what the court has said in the Title II context, as I just mentioned, is what the statute says is it applies to states. That's a limited category of defendants when you're suing the state itself. In that situation, the statute doesn't admit of any exceptions. It's a way of sovereign immunity. It says remedies are available to the same extent they're available to private parties against private defendants. So it's crystal clear in our opinion, and the legislative history explains this, and for the Rehabilitation Act it says there should be no exception in the law, either from the states or any particular type of remedy, period. I don't think that Congress needs to create a laundry list of immunities in order to express its intent that it applies when there's a proper defendant, period. Here there's a proper defendant. So we do believe, because especially the Rehabilitation Act piece of things involves a voluntary waiver, that that's very relevant here. And in fact, probably the most straightforward argument, you don't need to get to the issue of whether Congress can involuntarily aggregate the immunity. The House has subjected itself to suit, period. We'll pause you there and ask whether there are additional questions from the court. All right, counsel, you have reserved some time, so we'll let you wrap up later. If you would mute your audio and video, we'll hear from Mr. Galdary. Thank you, Your Honor. May it please the court, my name is Anthony Galdary and I represent the Speaker of the New Hampshire House of Representatives. Whether absolute legislative immunity bars this action requires the court to answer two questions. First, whether the implementation of a neutral, generally applicable House rule that governs how debate in voting occurs during House floor sessions constitutes a legislative act within the sphere of legitimate legislative activity. The existing case law, including this court's opinion in Harwood, uniformly indicates that it is and that the immunity would attach in this instance. Counsel, you keep calling the rule neutral. It may be neutral on the face, but it's not neutral in its impact as far as disabled legislators is concerned. Well, Your Honor, I don't believe this case establishes that at all. We have seven different legislators who have unique disabilities who have asked for one preferred accommodation. Other accommodations have been offered for the in-person sessions and they haven't been taken up upon. I don't think that we have any information in the record to suggest that this rule operates as a de facto ouster. There's certainly no principle of law that entitles an individual to their preferred accommodation. You mean threatening someone with death is not an ouster? We know that many of these individuals showed up for the in-person sessions. Many of them participated and there were, we know, there were no COVID-related incidents as a result. There is large spacing, there is distancing, there is guidance. Now it seems you're talking about what might or might not be shown in the record if we had some more findings here. But don't we need to know, I mean, we have on the surface here, at least for pleading purposes, a suggestion that disabled persons are being ousted from the legislature. More extraordinary is the persons who are being ousted are legislators themselves. And even more extraordinary, they're being oustered with the threat of death. At least that's how I read the pleading. Now that may not bear out in fact finding. There may need to be some judgment made. But doesn't that make the case for that even if you're right, that there's not an abrogation wholesale of the legislative immunity doctrine, that these type of circumstances here should be explored more by the court below on remand as we try to get done. And then if you're right, that it isn't a big deal, well, okay. But if it is as extraordinary as described, because when you're keeping out legislators, you're actually disenfranchising a large number of New Hampshire citizens. That sounds extraordinary to me. Well, certainly, Your Honor, the panel's decision did not suggest that it was taking an extraordinary actions approach to the case. I'm sorry. Your mic is off, Judge Lynch. That decision is vacated. That was the effect of the en banc proceeding. Judge Kayada has asked you questions which you are trying with respect to avoid answering. Perhaps you could answer his questions directly. Is there any objection by the state to a remand, excuse me, not by the state, by the speaker, to a remand for further factual development on this issue of threat of death, which would lead to not only discouragement of legislative voting by these people, but disenfranchisement of the constituencies they represent? Does the state, does the speaker have any objection to that? The speaker would contest that the actions are not extraordinary, that they don't fit into that bucket, that the defendants did not effectively raise that to prove that on a standard to get a preliminary injunction, but that if that were the remand that the speaker would defend and would adequately defend and would show for the reasons already in the record, why doing so would be extraordinarily problematic for the House of Representatives to do. And, you know, that's not evident on the face of it. The Senate has managed quite well with virtual voting. So you may think the record establishes what you just said, but I see nothing in the record that establishes those representations. Doesn't the record also reflect that there was successful committee meetings remotely? A House floor session involves between 330 to 380 members, all of whom- Doesn't that make it more dangerous? It would make, I think, remote participation more likely to be problematic for the session as a whole. But it involves a logistical burden that is far beyond a committee meeting, that is far beyond what the Senate confronts. And those are logistical burdens. We have the declaration of the chief of staff in the record. We have the declaration of the House clerk of the record, who says he doesn't know if he would be able to keep track of the votes and implement the system and keep track of the system if it were to occur. We're not talking about all 400 being remote. We're talking about accommodating a small number of people who would have to show that they have a disability that requires an accommodation.  And I think what we're trying to do is identify an unknown number of individuals. We have seven in this case, some of whom may not be entitled to such an accommodation. We know there are others who might want to request it, and there may be others beyond that.  And do we have to adjudicate all of these individual cases to the hindrance of the legislative process to figure out what precisely the technological solution is for a 400-member body to confer? If I understand the way the doctrine of legislative immunity works, the theory of it is to avoid precisely this type of inquiry by a court. It's a threshold question. It's a more formal question. But I think the thrust of Judge Carter's question is when the pleading pleads that the action of the House ousts a legislator, just as the pleading was understood to have done in Powell v. McCormick, just as it was understood to do in Bond v. Floyd. In that circumstance, there is an argument that there is simply no legislative act, because the act's character is not of the vein of a legislative act. It's a qualification effectively being imposed on one of the legislators, which is a different type of thing. I don't know what your response to this, but in responding to it, I just want you to also clarify one procedural point. You mentioned that there would be no basis for a preliminary injunction. I'm a little confused where we are procedurally in this case. The effect of an immunity defense is to require dismissal of the case, not simply rejection of a form of early relief like a preliminary injunction. So I assume what you are asking for is a dismissal of the complaint, not just a rejection of the request for preliminary injunction. I don't know what we're – I've forgotten what we're up here on, on appeal, whether we're just considering the injunction or whether we're actually considering a request to dismiss the case. But I think we're on an appeal from a dismissal of the case, which takes us back to the pleading, and I guess makes more salient even the way Judge Cottis framed the question for you, as to whether the fact that this is pled as an ouster makes it like Powell v. McCormick and Bond v. Floyd, and therefore effectively a challenge to a qualification requirement rather than a challenge to a legislative act. Well, I'm not sure to answer the procedural question, Your Honor. I do not believe that we ever had an opportunity to seek dismissal of the action on the ground that the court resolved the motion for emergency temporary restraining order and preliminary injunction upon. I think we're on effectively denial of that in the court's conclusion that the plaintiffs were not likely to succeed on the merits. That's my understanding of the procedure. Now I'm just wondering further, what was sought here? Was that a temporary restraining order? I believe the motion was filed as a temporary restraining order and or a motion for a preliminary injunction. And how did the district court treat it? Did it treat it as a temporary restraining order or as a preliminary injunction request? I believe it treated it as a preliminary injunction request. Okay. So assuming then it was a request for a preliminary injunction, does that suggest that a ground for denial here is simply to affirm on the ground that there is no basis for a preliminary injunction given all the ramifications here and the balance of the equities and we don't have to address the immunity question? And that can be addressed later on in the motion to dismiss, which has never been filed? Well, that is certainly one way to develop a more robust set of papers on a motion to dismiss. But the motion to dismiss will tee up, I think, the same legal argument. But it would do it in a different posture than we're in now, in which case you're suggesting all we need to do to give you the relief you think you're entitled to on appeal is simply deny the request. On a application of the standard equitable relief factors without even getting to the immunity question. And that would be fine with you at this stage? I believe affirming the district court's judgment that the plaintiffs were not likely to succeed on grounds of legislative immunity would be the... No, I meant you could do it in a different way. Rather than addressing the immunity question, could we affirm the denial of the request for relief just by applying the equitable factors? The court didn't reach that. Without making definitive ruling on immunity. I think you may be able to do it. I think the lower court, as Judge Thompson just suggested, did not reach those other factors. But what I'm saying to you is that can't we affirm the actual judgment of the district court, which you're saying was not a judgment to dismiss, but was merely a judgment to deny relief. Can't we affirm that on any ground? And a ground of affirmance would be on the factors. Yes. Well, the court didn't reach, the court didn't do any of that balancing below. The court felt legislative immunity killed the action, so it couldn't succeed. It didn't address other issues. I guess if it was sufficiently evident that there's no way a court could reasonably on this record grant the preliminary relief, couldn't we affirm on that ground? Mr. Gell, the RA, let me ask you a question I know on something you wanted it to, which is the alternative argument as to whether the legislative immunity rule is even applicable here. And I'd like to focus on the REHAB Act in particular, which your brother counsel has directed our attention towards. And I've been turning over in my mind this. Suppose Congress passed a statute that just said the New Hampshire legislature shall not exclude disabled persons from any of its activities, period. And then they excluded a legislature by rule from one of their activities. Would you say that the legislative immunity rule kept a federal court from enforcing that federal statute? Your Honor, I think there's a question as to whether a rule that would be invidiously discriminatory on its face or that's not an integral part. No, no. I didn't say anything about invidious discrimination. I just said they said, assume these people are disabled here, these plaintiffs are disabled, and assume they're kept out by lack of an accommodation. So they've been excluded from one of the activities of the legislature. So we had a statute that said New Hampshire legislature shall not exclude disabled persons in any of its activities. And assume, therefore, that enforcing the in-person rules excludes people who can't safely appear in person. I'd be surprised that legislative immunity would bar us from enforcing that statute. Tell me what's wrong about that. Well, I think the principles involved is that legislative immunity applies to a narrow range of acts that are integral to the deliberative and communicative process. What the New Hampshire Supreme Court might do with that, or another court might do with that issue, I don't know. If a plaintiff made a case, like in Kilbourne, that this was an extraordinary act, the extraordinary actions in Kilbourne, the execution of the Chief Justice... But you know, you're running from my... Mr. Goddard, your brief is very good, so I know you can handle this. Focus on my question. The New Hampshire legislature shall not exclude disabled persons in any of its activities. And assume that enforcing the in-person rule excludes the plaintiffs because of their disability. And I know you challenged that, but we haven't had fact-finding on it. It's a pleading stage. How would we not be able to enforce a statute like that? Because it is a legislative act that is entitled to the immunity. Even abuses, even if the court thought that was an abuse. The U.S. Supreme Court has said the purpose of the immunity is to insulate... It is so important to insulate the law-making process from external, executive, and judicial interference. You're not taking the position that the statute that Judge Catt is describing specifically said, including their legislative acts, that we couldn't hear the suit? I just said in any of its activities. Well, that's not true. There would be potentially a threshold question as to whether the legislature intended to reach the legislative acts. That immunity is so important and specific. To throw open the entire law-making process to attack by private suit of individuals or oversight by a federal executive is one of the very purposes for which the immunity exists. It's to guard against legislative independence. You want to challenge the outcome of the law-making process, you can challenge that. But when you want to bring seven different lawsuits, 20 different lawsuits that may seek to grind the state legislative process to a halt and derail legislative leadership from being able to move forward with the important public business of the state and pass critical laws for their citizens. You opened a Pandora's box that I think is highly detrimental to principles of federalism and state sovereignty. And that, Kenny, I think leaves open the question about whether it can even be done as a constitutional matter. Sure. Suppose Congress, though, agrees with everything you just said, but they think that the Lehanshaw legislature shouldn't exclude disabled persons from its activities and they say so. I would think that they may take a more narrow approach to abrogation than wholesale abrogation through general language. Explain to me how that's general if the statute said the Lehanshaw legislature won't exclude disabled persons in any of its activities. Period. It's all general. It doesn't speak to specific acts of the legislature that have to do with speech and debate and voting. And those are entitled to the immunity. Could you just go back and address, we got sidetracked on the remedies point because of me, but could you go back and answer Judge Karata's question about the ouster? So I take it the thrust of that question is just on the pleadings. Why don't we view the pleadings as alleging this is not a legislative act because it is a qualification of fact or a rule of ouster, no different from what was at stake in Powell v. McCormick and Bond v. Floyd? I don't know that Powell recognizes it is not a legislative act. Speaker McCormick in his official capacity was entitled to the immunity in Powell v. McCormick. It was the employees who executed the directive or could be enjoined from enforcing it. It's not the act that is ever subject to not being immune, except for perhaps in the extraordinary case. In Powell they did mention that if there were no other person, like a doorkeeper or somebody who could be sued, that might be a different case. So who else are you suggesting there is someone other than the speaker who could be sued here? No, we're suggesting this is not an executing rule. In that respect, it's true that there was the happenstance of another actor who could be sued there. But the court was pretty clear in saying it was not resolving the question that in the event there was no one else who could be sued, that the immunity would lie in a case like Powell v. McCormick or Bond v. Floyd. So if we take it that this is not your typical legislative act in the sense that it has the effect of disabling you from voting at all, how do you respond to that point? Well, the court would have to go through the analysis to find that it is not a legislative act and that it falls outside of what it means to be a legislative act. We would argue that how the House is going to proceed either in person, entirely remote, in some hybrid form, that that is inherently a legislative act. It is inherently a legislative decision that lies at the heart of the sphere of legitimate legislative activity. It's not like in another context where a legislator might refuse accommodation for somebody to have auxiliary hearing aid on the House floor. They couldn't hear something. And there's no rule about that. There's no legislative act that governs that. They may have an actual ADA claim if that is refused. Same thing with a service animal. But where the legislator's activity, the action, is an integral part of the deliberative and commutative process, for good or for ill, it is title to the immunity. It is shielded by the importance and the purposes of the immunity. Mr. Galdieri, let me ask you another hypothetical. And I know sometimes lawyers don't like hypotheticals, but they help us think about the case. Am I correct that if New Hampshire passed a new rule for its legislature that says in order to vote, you have to stand and address the chair, thereby preventing any legislatures in wheelchairs from voting, that you would argue that an action under the Rehab Act against the speaker in his official capacity to enjoin the enforcement of that rule would be barred by legislative immunity? Just as I understand your argument, it would apply fully and equally to the hypothetical I just gave on wheelchairs. It might be argued whether or not that rule would be integral to the deliberative and communicative process by which laws are considered and passed. That may be an open question. And who would answer that question? I think a court would answer that question. So here, if the plaintiffs are alleging that appearing in person rather than by Zoom is not an integrative part of the legislative process, we need the court below to explore that some. I think it's hard to, in the face of Harwood and McCarty versus Pelosi, say that the way that legislators speak, debate, vote, consider and pass legislation, whether they do it entirely in person, whether they do it all remotely or in some other way, is not integral to the communicative and deliberative process by which state law is made, is not a close question. I think as a matter of law, it is. The D.C. case isn't resulting in an ouster. Well, the D.C. case has a different system. It has proxy voting. It doesn't have remote voting. That's a different administrative. It's a different kind of accommodation. Whether it's an accommodation or whether it's just a rule that the House has decided to proceed by, yes, it's a different construct than what is being asked for in this case. But it's a rule that allows for participation in the legislative process. Well, I believe that these rules allow for participation in the legislative process, and there may very well be other accommodations that continue to allow for participation in the legislative process without attacking a legislative act. But your position is that immunity prevents the district court from even reaching that. Yes. Yes. That is our position, that immunity. This is a quintessential legislative act. Immunity prevents the district court from reaching it. If there was a rule that says we're not going to allow black legislators on the floor, how would that differ? Well, I think the plaintiff would bring their claim, and they would point to Harwood, and they would say that's a problem under Harwood, and a court would decide whether it is or it isn't. And why is this not analogous to Harwood? It's exchanging one infirmity for another one. The rule in this case is not on its face discriminatory in any way. I think the United States Supreme Court in Bogan indicates that it wasn't going to look beyond the formality of the legislative act to decide whether it was a legislative act entitled to the immunity. When you start digging below the surface in a factual way, you create the same problems that the immunity strikes to avoid. You have a neutral, generally applicable rule that says we're going to appear and we're going to make law in person, which has implications to other important principles constitutionally speaking, including public access to the process and the ability for the public to be able to see their state legislators in action, know what they are doing, see them in their environment, and be able to bring pressure to bear upon them by being there in person. All of that is potentially lost, and not to mention the logistics of having to ensure what if, what if you start having it remotely, and remote connections start failing, and people don't get votes counted, and they claim the clerk didn't count the vote correctly. The whole process begins to descend into chaos and call, perhaps, and raise the specters to the validity of legislation that comes out of that session. Those are all things to be balanced by the House, and the House makes a decision, and that decision is entitled to independence. Would you point to any Supreme Court case decided since 1996 that you think calls into question the holding in the footnote in Ombere? And let me help you some. I'm referring to in Ombere, the defendant raised legislative immunity as an alternative defense, and the court held that it didn't need to consider that defense. It was moot because the claim was only against the legislature in their official capacity. I'm not aware of any effort by the Supreme Court since then overruling that statement. Would you point us towards anything? Well, Your Honor, I would point you to two Supreme Court cases directly addressing legislative immunity that accorded the immunity to state entities, and that is Consumers Union, and that is Tenney. Tenney accorded the state committee legislative immunity. Why don't you share with us the dates of those two opinions? I understand. They're earlier than 1996. They're 1980. And we're familiar with Consumers Union, but, you know, the Supreme Court was familiar with Consumers Union because the brief for petitioner in Ombere specifically relied on Consumers Union. And yet it didn't convince the Supreme Court, and now you're saying it should convince us. Even if your argument is good, are we in a position to say the Supreme Court was wrong? Isn't that for the Supreme Court to say? I believe when you look at an unbroken line of cases directly addressing legislative immunity, that they speak to entities being able to receive the immunity. Because at the end of the day, they're just made up of members, and it's the members' actions that are under attack. Are you saying Ombere doesn't speak directly to legislative immunity? It uses the words legislative immunity. It refers to an argument entirely predicated on legislative immunity. So I'm puzzled as to why you would tell us the holding in Ombere that it doesn't need to address a defense of legislative immunity because the complaint is only against the legislatures in their official capacity. How is that not a holding that we can ignore? Well, I'm not sure that the Supreme Court buries such a holding of such profound importance in a footnote in a case like that. And I'm not sure that it represents the Supreme Court really considering those issues in the previous cases upon which it relies. I would have to go back, I think, and read Ombere again to fully be able to address your question. Are you aware of any precedent supported in this circuit for the notion that we can ignore Supreme Court holdings if they're put in footnotes? If the court discerns that it is a holding in the case, I would agree that the court cannot ignore it. What do you do when there's two holdings that go against each other? I think you're going to look at the cases... We can't ignore Virginia Consumer's Union either. I think you look at the cases that speak directly to the issue of legislative immunity in a comprehensive way and you go with those cases in the historical purposes of the immunity, which are not limited to individuals. They're to protect the legislative function. What do we do in the Lake Tahoe Regional Planning Authority case, which is also post-Virginia Consumer's Union? There again, they suggest that the suit could be brought against the entity itself, even though legislative immunity would attach to the members of the planning authority. Well, what's the difference? You might ask, what's the difference between attaching it to all the members or to the entity itself? But in this case specifically, the member has been named. That is who has been named in this suit. And I know the plaintiffs want to try to shuck and jive and say they really meant something else. But they brought a 1983 claim where they needed to name a member in their official capacity. They did not bring it against a state entity. And so there is presently no state entity in the case. The speaker cannot unilaterally change the rules of the house. And what we're dealing with, and we would say that the case is most particularly on point, including Kentucky v. Graham, which recognizes that Consumer's Union holds that the Virginia Supreme Court and the Chief Justice in their official capacity are entitled to legislative immunity. Those cases speak directly to the issue. And we believe that they control in this instance. That even if the speaker was really the stand-in for the state or the house as a whole, that he would be entitled to immunity. But the reality is that's not this case. That is not the defendant in this case. Other questions from the court of Mr. Gelderi? All right, we're going to leave your argument there then. Thank you, Your Honor. Mr. Piedra, you've reserved two minutes. Thank you, Your Honor. Just on that last point, and again, Attorney Israel Piedra for the appellants in this matter. On that last point, I will say that Consumer's Union doesn't address an action that stands against the state. It's a 1983 action. The state is not a proper defendant. That's not accurate, because in that case they specifically noted that although that might be generally too under will versus Michigan, the state had not interposed that argument. And so it was deciding the case as if it could be a proper party, because it was waived otherwise. I understand, and I think that the distinction is that the action itself did not sound against the sovereign. Yes, the parties waived the argument that the entity was a proper party. But still, the action did not sound against the sovereign the same way that a Title II action does. Therefore, my only point there is I think that that distinguishes it, and that, therefore... Is this a Title II action, or is this, as Garrett suggests, an expert to young action under Title II? It is a Title II action. Yes, you bring an expert to young action under Title I against an official, and that's how you explain why even though no persons are named as proper defendants, nonetheless you can bring a Title I action against an official. It says that's because it's an expert to young action. This is styled exactly the same as that. It's not naming any of the named entities in the statute. It's only naming the official, and it's in the official capacity. That suggests to me that the idea was that it was an expert to young action, which would give you the following advantage. On the merits, it would avoid having to confront the question of whether the abrogation violated the Constitution by not being within the Section 5 power. That's correct. I will just say that Supreme Court precedent is, I guess, crystal clear, and that's why we captioned the suit in that way, that an official capacity action is treated in all respects as an action against the state. I understand that there is an exception that... That's different than saying it is an action against the state. That's the whole point of expert to young. And that is what the Supreme Court has said that to. It said it is an action against the state, period. And that's why we pleaded it. I don't know how... I don't know that a different result should occur in this case. We could name the House of Representatives directly or the state of New Hampshire directly. I just don't understand how that would make a difference given the Supreme Court case law. Expert to young is not mentioned anywhere in our pleadings, not in our motion for preliminary injunction, not in our supporting memorandum of law. We've always treated this as an action against the state. And I think that's where the court can reconcile the positions in Consumers Union and those other cases which very definitively state legislative immunity is a personal immunity. Yes, in Consumers Union, the court assumed that the court was a person. That's why it applied. In this case, we're not suing a person. We're suing the state. So, again, we think that that is why it's reconcilable. I don't have any other remarks, Your Honors, but I'm happy to answer further questions. Anything else from the members of the court? If not, thank you all for your arguments. We will take the case under advisement. Thank you, Your Honor. Thank you, Judge Howard. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, please disconnect from the meeting.